IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Chief Judge Marcia S. Krieger

Civil Action No. 18-cv-00529-MSK-MEH

**UNITED STATES SECURITIES AND EXCHANGE COMMISSION,**

    Plaintiff,

v.

**JEFFREY O. FRIEDLAND,
GLOBAL CORPORATE STRATEGIES, LLC, and
INTIVA PHARMA, LLC,**

    Defendants,

and

**LANE 6552 LLC,
KATHY B. FRIEDLAND,
ASPEN UPPER RANCH, LLC, and
THE JEFFREY AND KATHY FRIEDLAND IRREVOCABLE TRUST,**

    Relief Defendants.

---

## OPINION AND ORDER DENYING MOTION TO DISMISS
---

**THIS MATTER** comes before the Court pursuant to the Relief Defendants' Motion to Dismiss **(# 47)**, the Plaintiff's ("SEC") response **(# 49)** and the Relief Defendants' reply **(# 50)**.[1]

## FACTS

According to the Amended Complaint **(# 45)**, Defendant Jeffrey Friedland is a longtime participant in the field of medical marijuana. In 2014, Mr. Friedland purchased shares of a

---

[1]     The motion under advisement supplanted a prior Motion to Dismiss **(# 41)** that was rendered moot by the filing of an Amended Complaint. That prior motion is therefore denied.

1

company called OWC Pharmaceutical Research Corp. ("OWC"), an Israeli company involved in the business of medical marijuana research. In January 2016, Mr. Friedland and his company, Defendant Global Corporate Strategies ("Global"), entered into an agreement with OWC by which Mr. Friedland would provide Investor Relations Services to OWC – specifically, Mr. Friedland would "writ[e] news releases, shareholder letters, corporate summaries," and engaged in various other communications with third parties to promote OWC. In exchange, OWC would provide Global with a substantial minority interest in OWC's stock.

OWC did not disclose the nature of its relationship with Mr. Friedland, identifying him only as an "investor." Mr. Friedland also "made numerous statements promoting OWC stock to investors without ever disclosing" the nature of his agreement with OWC or OWC's payments to him.

In January 2017, Mr. Friedland desired to sell Global's OWC stock. Along with his wife, Relief Defendant Kathy Friedland, he formed Relief Defendant Lane 6552 ("Lane"), a business entity that Ms. Friedland would control but which had "no apparent business purpose or operations other than to receive and then sell Global's OWC stock." While Mr. Friedland was actively promoting OWC and informing investors that his investment in OWC was "a very, very long-term situation," he requested OWC's transfer agent to remove the restrictive legend on the vast majority of OWC shares held by Global and to reissue them to Lane.

The SEC contends that Mr. Friedland made various false representations to the transfer agent about the cost of Global's acquisition of OWC shares and the price that Lane would pay Global to acquire them. The transfer agent eventually reissued the shares to Lane, and Mr. Friedland began attempting to sell the shares via Lane. He encountered some difficulty with certain brokers and clearing firms who were hesitant to complete the trades, and Mr. Friedland

made misleading representations to those brokers and agents in order to induce them to sell the shares. Eventually, Mr. Friedland, through Lane, retained a different broker (again making certain false representations to that broker about Lane's acquisition of the OWC stock), and in March 2017, sold the bulk of the OWC shares through Lane. (Later, Mr. Friedland made false representations that allowed another one of his companies, Defendant Intiva Pharma ("Intiva"), to remove the restrictive legend and liquidate its own holdings of OWC shares.) All the while, Mr. Friedland continued to promote OWC stock without revealing his role in the business or liquidation of Global's holdings in OWC.

Ultimately, the Friedlands used the proceeds of the sale of Global's (then Lane's) OWC stock to purchase various pieces of real estate, including a home in Snowmass, Colorado. They later transferred title to the house to Relief Defendant Aspen Upper Ranch ("Aspen"), and deposited funds from sale of OWC stock into Relief Defendant The Jeffrey and Kathy Friedland Irrevocable Trust ("the Trust").

Based on these allegations, the SEC asserts claims against Mr. Friedland, Global, and Intiva for securities fraud in violation of the Securities Act, 15 U.S.C. § 77a, and the Exchange Act, 15 U.S.C. § 78a; maintenance of a scheme to defraud asserted under both acts, and various other claims. As to the Relief Defendants, the SEC alleged that they were liable for equitable disgorgement because they received funds or property that were the proceeds of or traceable to the securities law violations alleged against Mr. Friedland.

All of the Defendants (apparently except Aspen) now move **(# 47)** to dismiss the claims in the Amended Complaint, arguing that: (i) the SEC's claims fail to plead the alleged fraudulent statements with particularity as required by Fed. R. Civ. P. 9(b); (ii) the SEC fails to allege a colorable claim under the Securities Act for failing to disclose compensation because OWC, not

Mr. Friedland, made some of the offending statements, because the statements do not "describe a security," because Mr. Friedland sufficiently disclosed all of the pertinent information, and because the SEC fails to adequately allege Mr. Friedland's scienter; (iii) as to the securities fraud claims under the Exchange Act, the SEC has not alleged any material omission, has not sufficiently alleged Mr. Friedland's duty to speak, and has not adequately alleged scienter; (iv) the scheme to defraud claims are insufficiently specific and are an attempt to evade the pleading requirements for misstatements; and (v) the claim against the Relief Defendants should be dismissed because there is no allegation that they received a benefit at anyone's expense.

## ANALYSIS

### A. Standard of review

In reviewing a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept all well-pleaded allegations in the Amended Complaint as true and view those allegations in the light most favorable to the nonmoving party. *Stidham v. Peace Officer Standards & Training*, 265 F.3d 1144, 1149 (10th Cir. 2001) (quoting *Sutton v. Utah State Sch. for the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999)). The Court must limit its consideration to the four corners of the Amended Complaint, any documents attached thereto, and any external documents that are referenced in the Amended Complaint and whose accuracy is not in dispute. *Oxendine v. Kaplan*, 241 F.3d 1272, 1275 (10th Cir. 2001); *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002); *Dean Witter Reynolds, Inc. v. Howsam*, 261 F.3d 956, 961 (10th Cir. 2001).

A claim is subject to dismissal if it fails to state a claim for relief that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To make such an assessment, the Court first discards those averments in the Complaint that are merely legal conclusions or "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.* at

678-79. The Court takes the remaining, well-pleaded factual contentions, treats them as true, and ascertains whether those facts (coupled, of course, with the law establishing the requisite elements of the claim) support a claim that is "plausible" or whether the claim being asserted is merely "conceivable" or "possible" under the facts alleged. *Id.* What is required to reach the level of "plausibility" varies from context to context, but generally, allegations that are "so general that they encompass a wide swath of conduct, much of it innocent," will not be sufficient. *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012).

Allegations of fraud are further subject to the particularity requirements of Fed. R. Civ. P. 9(b). To satisfy those requirements, a party asserting a fraudulent statement, act, or scheme must "provide factual allegations regarding the who, what, when, where, and how of the alleged claims," with sufficient specificity to put defendants on notice of the nature of the claim. *U.S. ex rel. Polukoff v. St. Mark's Hospital* 895 F.3d 730, 745 (10th Cir. 2018).

**B. Failure to disclose consideration**

15 U.S.C. § 77q(b) provides that it is unlawful for a person to "give publicity to or to circulate any . . . communication which, though not purporting to offer a security for sale, describes such security for a consideration received [ ] from an issuer . . . without fully disclosing the receipt" of such consideration. The purpose of the statute is to "protect the public from [persons] that purport to give an unbiased opinion, but which in actuality are being paid for it." *SEC v. Thompson* 238 F.Supp.3d 575, 590 (S.D.N.Y. 2017). To assert a claim under this statute, the SEC must allege: (i) that Mr. Friedland[2] published or circulated a communication, (ii)

---

[2] The SEC asserts its failure to disclose claim against both Mr. Friedland and Global. Global's liability is described in *respondeat superior* terms. Global has not challenged the sufficiency of the failure to disclose claim asserted against it, and thus, the Court does not reach it.

that the communication described a security, (iii) that Mr. Friedland did so for consideration, and (iv) that Mr. Friedland did not disclose in the communication both the fact of his receipt of consideration and the amount received. *SEC v. Gorsek*, 222 F.Supp.2d 1099, 1105 (C.D.Ill. 2001).

The Amended Complaint sufficiently alleges each of these elements. It identifies numerous communications made by Mr. Friedland, both orally and in writing. *See e.g. Docket #* 45, ¶ 46 (February 29, 2016 interview promoting OWC stock), ¶ 55 (November 22, 2016 email to listserv), ¶ 56 (identifying numerous promotional emails), ¶ 59 (January 4, 2017 interview), etc. Those same paragraphs clearly allege that Mr. Friedland promoted OWC and its stock in those communications. *See e.g.* ¶ 59 (quoting Mr. Friedland's January 4, 2017 interview: "2017 is going to be a fabulous, fabulous year . . . for companies like OWC . . . [Intiva is] still sitting with the stock. For us, it's a very, very long-term situation"). The SEC has adequately alleged that, through the January 2016 agreement, Mr. Friedland agreed to promote OWC and its stock in exchange for receiving a considerable payment in the form of that stock. ¶ 34-39. And the SEC makes clear that in each of the identified communications, Mr. Friedland did not disclose that he was being paid by OWC to promote the stock, nor did he disclose the amount that he was paid. *See e.g.* ¶ 49, 55, etc. Thus, the SEC has sufficiently alleged Mr. Friedland's violation of 15 U.S.C. § 77q(b).

Mr. Friedland offers several brief arguments, few supported by authority, that the SEC's allegations are deficient. He contends that his failures to disclose are insignificant because he clearly and repeatedly disclosed his involvement with OWC as an investor and advisor, and that these should suffice to accomplish the statutory goal of informing the public that Mr. Friedland's statements might not be objective. Putting aside any other unpersuasive aspects of this

argument, this Court dismisses it with the simple observation that courts have made clear that, along with disclosing the fact of paid promotional activities, the public is entitled to also know the amounts paid. *See generally U.S. v. Wenger*, 427 F.3d 840, 850 (10th Cir. 2005) (statute "requir[es] publicists to disclose the amount of consideration they are receiving"). The mere fact that Mr. Friedland might have disclosed his affiliation with OWC as an investor or advisor did not suffice to inform the public of how much OWC was compensating him for that service.

Mr. Friedland also argues that, with a bit of detective work, the public could have pieced together the amounts of OWC stock owned by Mr. Friedland, Intiva, and Global, and thus ascertained the amount of his compensation. The Amended Complaint alleges that in February 2016, OWC made regulatory filings that disclosed the total amount of Global's ownership in OWC. ¶ 40. But even assuming the public can be required to scour and correlate multiple sources of information in order to obtain the facts that 15 U.S.C. § 77q(b) entitles them to have, Mr. Friedland's argument fails to recognize that simply knowing the number of shares of OWC held by Global does not inform the public as to how many of those shares were given as compensation for promotional activities, versus how many were purchased by Global on the open market or which were given to Global or Mr. Friedland as compensation for other services that Mr. Friedland had provided. Thus, once again, Mr. Friedland's argument does not recognize the public's right to know exactly how much he was paid specifically for his promotional services.

Mr. Friedland also makes a vague argument (without supporting authority) that his communications were simply "listing his investment on OWC and his role on their advisory board," and that they were not "describing a security." A promoter "describes" a security when he touts "that company's investment value as a securitized asset." *SEC v. Liberty Capital Group,*

*Inc.*, 75 F.Supp.2d 1160, 1162 (W.D.Wa. 1999). Clearly, the Amended Complaint alleges that Mr. Friedland promoted OWC's stock. *See e.g.* ¶ 48 (stating that "Investors need to take a look at what this company is truly about . . . I think investors need to put [OWC] on the radar screen"). Thus, the Court is satisfied that the allegations in the Complaint involve Mr. Friedland "describing a security."

The Court has considered Mr. Friedland's remaining arguments on this point and finds them to be similarly without merit. Accordingly, Mr. Friedland's motion to dismiss the SEC's failure to disclose claim is denied.

### C. Securities fraud claims

Claims Two through Five allege that Mr. Friedland engaged in securities fraud in various respects, in violation of Section 17(a) of the Securities Act, 15 U.S.C. § 77q(a), and Section 10(b) and Rule 10b-5 of the Exchange Act, 15 U.S.C. § 78j(b) and 15 C.F.R. § 240.10b-5. The elements of these claims are functionally similar, requiring the SEC to allege: (i) that Mr. Friedland made a misrepresentation or omission, (ii) of a material fact, (iii) in connection with the purchase or sale of securities, and (iv) with sufficient scienter – that is, the intent to defraud or recklessness. *See e.g. In re Gold Resource Corporation Securities Litigation*, 776 F.3d 1103, 1108 (10th Cir. 2015) (PSLRA case). Mr. Friedland challenges the SEC's pleading of each of these elements except the "in connection with the purchase or sale" one.

Mr. Friedland's first argument is that the SEC only alleges omissions by him, namely omissions regarding disclosing his being paid to promote OWC stock. This is a needlessly restrictive reading of the Amended Complaint. In addition to the numerous allegations that Mr. Friedland failed to disclose his status as a promoter of OWC stock at various points in time, the SEC alleges numerous affirmative false statements made by Mr. Friedland in connection with the

OWC stock, including false statements to OWC's transfer agent in order to remove the restricted legend on the shares, *see* ¶ 65-67, and to a broker in order to induce the broker to sell the shares, *see* ¶ 74, among others. These statements are sufficiently alleged as required by Rule 9(b), insofar as the SEC adequately identifies the false statement (*e.g.* Mr. Friedland's representation to the transfer agent that Global acquired its OWC shares at a cost of approximately $51,000, when, in fact, those shares were in-kind payments for Mr. Friedland's promotional work; that Mr. Friedland falsely told the broker that he "has no role in the public relations or [investor relations] side" of OWC, when, in fact, his agreement with OWC specifically called for him to perform investor relations services), when it was made, who it was made to, and why it was false.

Mr. Friedland also alleges that the SEC has failed to adequately allege the materiality of his false statements or omissions. This argument largely springs from Mr. Friedland disagreeing with the SEC's contentions that these statements and omissions were material, not an argument that the Amended Complaint does not contain sufficient allegations. As such, the argument is largely beyond the scope of a Rule 12 motion. The Amended Complaint clearly alleges the materiality of each alleged misrepresentation or omission. As to the omissions regarding Mr. Friedland's compensation for promoting OWC stock, the materiality is obvious: Congress has already declared that investors would find the details of such compensation material by it enacting 15 U.S.C. § 77q(b). As to Mr. Friedland's misrepresentation to OWC's transfer agent, the SEC sufficiently alleges that transfer agents would find such misrepresentations material, ¶ 68. Although this statement is somewhat conclusory, the Court is satisfied that it is sufficient to put Mr. Friedland on notice of the SEC's claim, and provide him an opportunity to develop his defense to that assertion in discovery. Similarly, although the SEC does not expressly allege that

brokers would find his misstatements about his role in OWC material in deciding whether to assist him in the sale of his OWC stock through Lane, the Amended Complaint alleges (or at least provides a basis to reasonably infer) that at least one broker did decide not to work with Mr. Friedland when his explanations about his roles in OWC and Lane were unconvincing. ¶ 75-76. This, too, is a sufficient allegation of materiality by the SEC at the pleading stage.

Finally, Mr. Friedland argues that the SEC failed to adequately allege his scienter. As noted above, the SEC must allege facts showing that Mr. Friedland either acted with the intent to deceive or that he acted with reckless disregard to the possibility that investors would be deceived. With regard to Mr. Friedland's failure to disclose his promotional compensation, the SEC has adequately alleged his scienter simply by showing that he knew what he was being paid; from there, the Court can "draw[ ] the logical conclusion [that] he knew failing to disclose this compensation would mislead those" who received his communications. *SEC v. Curshen*, 372 Fed.Appx. 872, 881 (10th Cir. 2010). Mr. Friedland's argument that his frequently-disclosed status as an investor in and advisor to OWC would distinguish his situation from the anonymous tout in *Curshen* and dispel any inference of scienter is an interesting one, and might even ultimately prove fruitful at summary judgment. But once again, the Court observes that it is settled that a promoter must disclose not only the fact of his compensation, but also the amount in order to avoid deceiving investors, and in that regard, *Curshen* would seem to continue to apply here: Mr. Friedland knew how much he was paid to promote OWC and the public did not. Similarly, the Court is satisfied that the SEC has adequately alleged Mr. Friedland's scienter with regard to the various misrepresentations that have been asserted. The Amended Complaint is clear that Mr. Friedland was aware of the true facts and that he instead acted with the purpose of deceiving others, such as the transfer agent and broker.

Accordingly, the Court denies Mr. Friedland's motion to dismiss the securities fraud claims against him.

**D. Scheme claims**

Claims Three and Five assert that Mr. Friedland engaged in a "scheme to defraud" investors, in violation of the Exchange Act, 15 C.F.R. § 240.10b-5, and the Securities Act 15 U.S.C. § 77q(a)(1), (3), respectively. Mr. Friedland primarily attacks these claims "for the same reasons discussed above" with regard to the securities fraud claims. For the same reasons, the Court rejects those arguments.

Mr. Friedland makes one additional argument: that where "scheme" liability is asserted based on misstatements, the SEC must also allege facts showing "the performance of an inherently deceptive act that is distinct from an alleged misstatement." *Citing SEC v. Kelly*, 817 F.Supp.2d 340, 343-44 (S.D.N.Y. 2011). The SEC responds that the deceptive act here is Mr. Friedland's establishment of Lane, a vehicle that allowed him to sell the OWC stock that he and Global owned without revealing that he was behind the sales, thus allowing him to continue touting OWC stock to others. Although Mr. Friedland disputes the SEC's allegations regarding the purposes for which Lane was established, the Court is limited to the allegations in the Amended Complaint and finds that those are sufficient to plead a deceptive act that would support scheme liability.

### E. Relief Defendants

Finally, the Relief Defendants offer an abbreviated argument that the SEC's claim against them is insufficiently pled because "none of the elements for unjust enrichment are supported by the Amended Complaint, much less with particularity.

The Relief Defendants' arguments regarding the elements of unjust enrichment are somewhat confusing, given that the SEC's claim against them sounds in equitable disgorgement, a different doctrine. Equitable disgorgement is appropriate where an otherwise innocent person is nevertheless in possession of ill-gotten funds and does not have a legitimate claim to those funds. *SEC v. World Capital Market, Inc.*, 864 F.3d 996 (9th Cir. 2017). The SEC has suitably alleged that the Relief Defendants are in possession of funds derived from Mr. Friedland's misdeeds and that the Relief Defendants gave no consideration for the receipt of those funds or otherwise have a colorable claim of entitlement to them. This is sufficient.

### CONCLUSION

For the foregoing reasons, the Defendants' Motion to Dismiss **(# 47)** is **DENIED**. The Defendants' prior Motion to Dismiss **(# 41)** is **DENIED AS MOOT**.

Dated this 19th day of February, 2019.

                          **BY THE COURT:**

                          */s/ Marcia S. Krieger*

                          Marcia S. Krieger
                          Chief United States District Judge